## UNITED STATES v. RISTINE.
### Civ. No. 2100.

United States District Court
D. New Mexico.
Dec. 11, 1952.

Maurice Sanchez, U. S. Atty., Albuquerque, N. M., Edward E. Triviz, Albuquerque, N. M., Asst. U. S. Atty., Herman Wolkinson, Attorney, Department of Justice, Washington, D. C., for plaintiff.

Allen M. Tonkin and Joseph L. Cole, both of Albuquerque, N. M., for defendant.

HATCH, District Judge.

The following findings of fact and conclusions of law are based on the oral ruling of the Court made at the conclusion of this case on December 3, 1952 and a transcript copy of such ruling is being filed with these findings and conclusions.

### Findings of Fact

I

Bringing its action pursuant to Section 1345, Title 28 U.S.C. and Section 403(c) of the Renegotiation Act, as amended, 50 U.S.C.A.Appendix, § 1191, the United States sues on a renegotiation agreement No. W–41–038–eng–PAS–808 executed on December 30, 1944 by H. M. Nicholson in behalf of himself and the defendant, Paul M. Ristine, "co-partners doing business under the firm name of H. M. Nicholson, Electrical Contractors with principal place of business at 939 South Broadway, Los Angeles, California," to eliminate excess profits of $25,000 under the performance of the subcontracts identified in such Renegotiation Agreement, during the existence of such partnership, and seeks recovery of the balance presently due under such Renegotiation Agreement, plus interest and costs.

Admitting in its Answer the existence of a partnership arrangement between the de-

fendant and the said H. M. Nicholson during 1942, the defendant alleges such partnership was dissolved as of April 1, 1943 pursuant to an instrument referred to as "Agreement for Dissolution of Partnership" signed by the parties on July 29, 1943 and contends that at the time of the execution of such instrument it was orally understood that H. M. Nicholson was to take care of any excess profits which might later be determined and eliminated by the government under such subcontracts performed by the parties; that he was never a party to any renegotiation proceedings; that "the said Herbert M. Nicholson had no authority to bind this defendant under any said agreement, the relationship between the defendant and the said Herbert M. Nicholson having been previously dissolved," and that with reference to Section 1191(c)(3), 50 U.S.C.A.Appendix "the time for any said proceedings has long since passed."

## II

As the Court observed in its ruling, even by the solemn agreement signed by the parties H. M. Nicholson and the defendant, Paul M. Ristine, the facts are clear that there was a partnership doing business under the firm name of H. M. Nicholson, Electrical Contractors with its principal place of business at 939 South Broadway, Los Angeles, California, during the time covered by these contracts involved in this action and more particularly identified in the 1942 partnership return (a copy of which is on file as Plaintiff's Exhibit No. 1) as well as in the Renegotiation Agreement W–41–038–eng–PAS–808 (on file as Plaintiff's Exhibit No. 2) so executed by the said Herbert M. Nicholson on December 30, 1944 in amount of $25,000.

## III

That the first notice received by H. M. Nicholson, in behalf of such partnership from the War Department leading up to the determination or elimination of excess profits realized by such partnership through the Renegotiation Agreement was correspondence from the War Department dated September 6, 1944 (Plaintiff's Exhibit No. 5).

## IV

According to the testimony of H. M. Nicholson, between the time of the receipt of such War Department correspondence of September 6, 1944 and the execution of the Renegotiation Agreement of December 30, 1944 in behalf of the partnership, he was in touch with the defendant Paul M. Ristine and made him aware of such renegotiation proceedings, as well as the execution of the agreement itself and later the demands being made for payment thereunder. More than that, however, the defendant himself testified that he knew of the execution of such agreement in February, 1945 and the evidence is also clear that he never repudiated the action of H. M. Nicholson in so executing such renegotiation agreement on the basis of which the defendant also accepted a reduction of income, for income tax computation equal to the amount of excess profits included in the amount of such agreement. In this connection, the evidence also shows that when his 1942–1943 tax returns were audited by the Internal Revenue Agent, Mr. John Heggem, who testified for the government, the defendant, Paul M. Ristine, accepted the findings of such agent including the application of tax credits allowed under the Renegotiation Agreement. In other words, as stated in the Court's ruling: "But in this case I find as a fact that the defendant Ristine did have knowledge of the renegotiation agreement. He testified himself he knew of it in February 1945. His subsequent acts, all of them in relation to his taxes, his dealings with the Internal Revenue Bureau, the receiving of credits which he was bound to have known about because he received a report from the auditor, and he doesn't deny that, shows a ratification and confirmation of the renegotiation agreement entered into by Nicholson."

## V

After allowing all the tax credits to which H. M. Nicholson and the defendant Paul M. Ristine are entitled under such Renegotiation Agreement, the evidence shows that at the time demand was made on the defendant between December 5 and 9, 1947 by Maurice Sanchez, Esquire, then

Assistant United States Attorney for the District of New Mexico, the balance due was, as set forth in the Complaint, $8,097.73, together with interest thereon at 6%. Since such demand, however, Judgment was on November 9, 1950 entered in the United States District Court for the Southern District of California, Central Division, in Civil Action No. 7554–WB, against the said Herbert M. Nicholson for the balance due under such Renegotiation Agreement in the total amount of $9,459.48, and that the balance due on such judgment is $9,459.48 representing $8,097.73 principal and $1,361.75 interest at the rate of 6% per annum on such principal from January 22, 1948 to November 9, 1950, less payments in amount of $2,000 heretofore made by H. M. Nicholson plus further interest at the rate of 6% on the unpaid balance thereof until paid, plus costs of this action.

### VI

Summarizing the evidence warrants the following general conclusion: that H. M. Nicholson with whom the defendant had been in partnership doing business under the firm name of H. M. Nicholson Electrical Contractors with principal place of business at 939 South Broadway, Los Angeles, California, in 1942 in the performance of the subcontracts identified in the Renegotiation Agreement properly entered into such agreement on behalf of the partnership for the elimination of excess profits realized by such partnership in the performance of such subcontracts, all of which were subject to such renegotiation as might be determined by the Secretary of War.

### Conclusions of Law

### I

This Court has jurisdiction over the subject matter as well as the defendant.

### II

■■ Under the partnership which existed during the time covered by the subcontracts identified in the Renegotiation Agreement and under the Uniform Partnership Act, which it has been agreed was in effect in California, Corporations Code, § 15001 et seq., where this partnership was created and existed, the remaining partner H. M. Nicholson could, and properly did, continue the partnership until the winding-up of the partnership affairs and in executing such renegotiation agreement the said H. M. Nicholson also properly acted for and in behalf of the partnership and the other partner, Paul M. Ristine, was thereby bound by such actions in that regard.

### III

■■ While it is contended by the defendant that at the time of execution of the instrument referred to as "Agreement for Dissolution of Partnership", it was orally understood that H. M. Nicholson was to take care of any excess profits which might later be renegotiated, any such dealings by the partners would have no effect and would not be binding upon the rights of the United States in pursuing its interest for the excess profits so eliminated. So regardless of what may have been the understanding between the partners as to the excess profits, excess profits came to rest in the hands of the defendant Paul M. Ristine and that liability, while it may be considered contingent, for excess profits existed on account of any such profits which might later be determined or eliminated under the subcontracts performed by the partners in 1942 and for which the liability of the partnership is joint and several and each individual partner is liable to pay the whole.

### IV

Having been properly executed by the said H. M. Nicholson on behalf of the partnership within one year following the commencement of the renegotiation proceedings, such agreement is, under the Renegotiation Act, final and conclusive according to its terms, and the defendant Paul M. Ristine is liable for the balance presently due thereunder in amount of $9,459.48 (representing $8,097.73 principal and $1,361.75 interest at the rate of 6% per annum on such principal from January 22, 1948 to November 9, 1950), less payment in amount of $2,000 heretofore made by H. M. Nicholson, plus further interest at the rate of 6% on the unpaid balance thereof until paid, plus costs of this action.

Judgment will be prepared in favor of the plaintiff in conformity with the foregoing findings of fact and conclusions of law and presented to the Court for signing and entering at Albuquerque, New Mexico.